And with your permission, or in your instruction, if I can either refer to my client's name or if you would like the record to be clear that I'm always referring to Sealed Appellant or the names of other parties. I didn't know how you wanted to address that. It's clear to me if you use the name, it's your discretion. This case is about loyalty. And while our profession does not require a lawyer to always fall on the sword of his client, it does require us not to impale our clients on them. And when we as a profession have a value of self-governance, if we want to be able to control in the authority of how we discipline ourselves, then how we deal with conflicts is instrumental. And this case is a beautiful test case because it really pits into account things that we both agree on, which is the integrity of the system. And before you get at the vast integrity level, you're — what the relief you're requesting is to vacate. Yes. The guilty plea. Yes. And therefore, you accept that the government could — would proceed to trial? Yes. They could supersede? Yes. Go back to 15 counts? Yes. Okay. Then is there any reason they wouldn't be able to use your client's statements in December where he's saying the lawyers bribed me? I think they intend to. I absolutely believe they're going to do that. And it's going to have to be a — So the relief you're asking for, I mean, it's his own statement saying I was bribed. And so he would be exposed to a huge amount more than the C-1C plea he took. It's his own statements that based upon what my lawyers told me, that under this Grace case and under their view of what happened in Skilling, which I think is bad advice, if you took anything, a peppercorn, with the intent to be influenced, that's bribery. And I think he got bad legal advice. Oh, so his explanation for telling the FBI that he was bribed even by his two current lawyers is that now that he, veteran judge, prosecutor, defense attorney, knows the law, what he thought he was taking as a bribe wasn't a bribe? Well, you've expressed my biggest fear in this case, which is this idea that McGinty is this perfect defendant who is omnipotent and knows the law, both Federal and State. And so, first, he's a State practitioner, not a Federal practitioner. And there is a huge difference that I think that he is unaware of. Number two, I think judges are far more vulnerable, having represented several, than regular defendants. I think you have the biggest target on your back. And at that point, you are the person that gets far more isolated than any other person. No other judge will talk to you. You're isolated by your peers. The lawyers at that point all view you as suspicion. So I do think he's in a very, very narrow window of listening to his lawyers. And the reason we know that is because he's so inconsistent in what he does. And all I can tell you is it's accurate. If he was sophisticated and his lawyer says, don't talk to the FBI when they come to your house, what does he do? He talks to them. When they say — go ahead. Well, I guess, then, maybe just focusing on the habeas denial and whether there's error therein, it doesn't seem clear to me we have to reach the much trickier question of Strickland or Kyler if your client secured as counsel the people that he himself thought had bribed him. Why would the government have to disclose anything? And that's their argument. And to address that argument, we have to go back to the Luby's parking lot one night because that's when Brown, that's when his lawyer says, you need to meet me in the Luby's parking lot. You're under investigation. Remember, this didn't start with McGinty reaching out to these lawyers saying, I need help. I got a leak from the U.S. Attorney's Office from a person who's now a Federal judge, Contreras, that Raymond Angelini and Sid Harrell and you are under investigation. So if we start at the inception, he wasn't looking for their counsel. They came to him and said, if we all be quiet, this can go away. But for — we're focused now on the Rule 11 colloquy. Yes. Should the plea have been taken? Was it knowing and voluntary? And as I understand it, his argument is, no, I get to vacate the plea that I secured that knocked out 14 counts and got me just a two-year sentence. And the reason I do is my attorneys were ineffective, and they were ineffective because they had a conflict. But I don't see any law that would say he can assert the conflict if he knew about the conflict. He thought they'd bribed him. He knew that. He told the FBI that. So here's where I disagree related to the word bribery, and he knew. First off, I think the advice he gets is contaminated from the moment he is told. And so you have to look. This is why Kyler is so important, because the idea is when you have contaminated advice, how can you then say anything at that point is voluntary thereafter? And when you go back in time, it's only in December, where after the plea is happening and he's not having a trial, because if you read his first affidavit before I'm ever appointed, his first affidavit is, I thought we were having a trial. My understanding was that we were having a trial, and I had witnesses, and I didn't do anything wrong, and the very people that told me, you didn't do anything wrong because we've all done these kind of things for one another. But in his plea agreement, he swears to being fully satisfied with counsel. He does. You're right. You're not saying that the statements that he made to the FBI were false statements to a Federal officer. No. No, but I'm suggesting the word bribery is certainly the word that gets used over and over again because that's what he's been told, and he then believes, well, I must be guilty of this, and so if I'm guilty of it in this case, I must be guilty of it with these other two lawyers, who they clearly want to talk about and they clearly want to debrief with me because I think this investigation was far, far bigger than this new judge. Is there any new information that your client got after he agreed to be represented by them? Did he get any new information? New information? I mean, he knew about the bribery or whatever you want to call it, whatever term you want to use. He knew about the issues that give rise to the alleged ineffective assistance at the time he agreed to be represented by them. Arguably. Sure. I mean, that's what I'm asking you. Is there any new information? No, I guess the — Or is it all available to him, and yet he nevertheless agreed, I'd like to — I'd like for you all to represent me? That's a great question, and I guess you're right. The nuance I keep saying is whether it's a bribe or whether it's a payment to influence in this idea of grace. Go ahead. No, no, no. It's good. Whatever you want to call it. Okay. Were there new facts that came to light to him or was it all known to him at the time? I think it's a new — it's a new interpretation that what you've always been doing is wrong, and that's the difference that happens. Because up until then — Why does he essentially assume the risk? Why does he assume the risk? I think at that point he felt like he was indebted to them because they came forward to him and said, you're under investigation and this is what we've learned in a Federal investigation. We're looking at Acevedo. He was indebted to them. Well, I think those — He needs them to represent him. Is that — Well, I would say that he wasn't expecting this call to say, meet me in the Luby's parking lot. You're under a Federal investigation. And so when someone then comes to you with that information, I would assume that your source of information, those lawyers, are pretty important. And that's why I would say he continued that relationship as one of — obligation is the wrong word, but certainly this is how he learned of it. He didn't get a knock on the door first by the FBI. He wasn't arrested. He's learning it from them, so he figures they know everything. And further, if I was a better lawyer at the time, I'm sorry that I made this mistake, I would have realized that at the very outset there was a multiple representation issue, because they say I'm talking to Angelini, I'm talking to Sid Harrell, and I'm talking to you. So when you ask about Kyler, I do think at the very beginning you're already having two lawyers talking to multiple judges about a Federal investigation, where it gets really messy, really fast. And I think in answer to your question, it's all about his perception of what he's told he's done wrong. And so now it's — remember — He has some equivalent to a Garcia hearing, right? I would guess. And he's a judge and he was a prosecutor defense attorney. He knows intimately Garcia hearings. So even accepting the habeas application he filed, where he says his lawyers said, just what you told us, I'm talking to multiple people. At that point, he knows there could be a conflict. Why doesn't he then ask the district court that's going to take his plea, hey, I want to disclose something. My lawyers are representing a bunch of people. Let's get a hearing. He doesn't. He's trying to switch that to the government and say they had to come up with that. I am. Let me be clear. I'm saying that. I'm — well, on his behalf, I'm saying that the authority — that when the government knows something, the trial judge is the authority, and that the two partisans, the two advocates shouldn't decide whether there's a conflict or not. That if they're — I guess my take is that ultimately, the trial court is the authority. And if you know something or have a disconcern, you have a Ferretta hearing, you have a Garcia hearing, you have an open court, so that way at least — But you only have a Ferretta hearing when a defendant says, I want to go pro se. The whole problem here is your client didn't disclose that he thought his lawyers were representing multiple counsel. He doesn't disclose that all the government's got is a snitch that they have anxiety about his validity. In a 302, they're giving to the lawyers the — you know, obviously in Garcia hearings, the government can't walk in and blow up relationships all the time just because a snitch says there's some problem here. They need to be careful not to intrude into the defense camp. They would expect your client, who knows these people and knows they're representing other people, as you just described, would have that obligation to come forward and say, Judge, I'm a little worried about taking this plea. And my best answer is that that's why that relationship is so important, to be undivided so that loyalty cannot be at all of an issue, because I don't think a trial judge would have appointed these two lawyers to represent him if we look at it the other way. I don't think we would tell a law student this is a good relationship to begin to. If you look — It may not be waivable. Interesting, tough question, had the trial judgment told. But the difficulty here is you're asking the government to disclose something that they, even after your client tells them he was being bribed, they couldn't corroborate. But your client is the one person who knows it all. I think those are two — let me break it into two separate issues. So the one thing is I'm trying to debrief to get a 5K or something to say there's more information about this corruption issue. The second is really about the conflict where a criminal defense lawyer, Al Acevedo, is debriefing and is being asked, who else does what you do? And he names two lawyers, Brown and Norton. This is, I guess, the conflict that I keep saying it's hard for me to ever get away from, that once I, as a criminal defense lawyer, see my peer being interrogated, being asked what are the same things this person — You're the podium they're trying to record. Sorry. Then — then this whole issue is after the fact, that after he's pled guilty and after he's getting advice, I think second legal opinions from other lawyers saying, hey, you might have been the fall guy. Isn't this seem odd that this is a huge corruption investigation and that there's another magistrate that was accused of taking money in exchange for resetting bonds? But in your brief toss, you cite approvingly the FBI sworn affidavit. You're endorsing. You aren't backing off. You're right. I wasn't there. And so all I can be able to say is if he — if he said that that was true under oath, that's — He said he was bribed before any of the rearrangement by these two people. Yet he still picks those lawyers as his. Seems like he's fully knowing. And it looks like, if anything, as the district judge said, it's either collusion, he wants to run the plea through because they're all exposed, or he just doesn't care, he thinks they're great lawyers, but he's informed of the conflict and he's implicitly waiving. And I guess my answer is twofold. Number one, I didn't — I don't mean to suggest he used the word bribe. The government's FBI agent says this is what was said, and I wasn't in the conversation. I do think at some point he's being told, did you ever accept money from them with the idea that it would influence you? And he said yes. And he was told by his lawyers that under grace, that means you're guilty of bribery. And that's not the law. And I think at the sentencing hearing, when the government says even a peppercorn is enough. But he knew to go and pay the garage for the maintenance work that was done. I knew that was done on his behalf, which is a bribe if he's doing favors for those two lawyers that are now his lawyers. So I don't see where — I can't imagine that he really wants you to win this argument because he's looking at — I think he very much does. Well, let me tell you about the garage. You get a lot of exposure if you win. He does. Let me address the garage. And I've thought a lot about the garage issue, because there's two issues there. There's two issues with the garage. The first is, if it's a bribe, why is he paying a few hundred dollars for the car repair and the parts? He was told they were fake. Right? That text that's so incendiary. I'm a whore for money. Well, but he also — but he also at that point believes that these were favors. And so when they complain that it wasn't, but it says this car mechanic owes me a favor. And the mechanic wasn't a defendant in his court. And there was no benefit for the mechanic to give him that issue. And the second issue is, remember, that's a conversation he has with a lawyer. I mean, the lawyer says, hey, should we repay this? And so that's another issue for a conflict, is when that lawyer — he can't use an advice of counsel defense. Who advised him to backdate the check? Does the record reflect that? I think the two different arguments are either he said I'll backdate it or I'll repay them, but I don't — depending on who says it, I think there's a dispute as to whose But we know the amount's very small. And so I figure if it's a bribe, you would want to give a $5,000 or $10,000 amount. But the fact is, if he's only giving a few hundred dollars and the guy says, look, it's been paid for already, I mean, he's not in those conversations. He's not in those one-to-ones. So I do think that he very much does want to vindicate this. I think he was told one thing, which is we're going to have a trial, and that just because you accept something of value, if there's no quid pro quo, it can't be bribery. And all the things that happened in this case weren't quid pro quos. There was no — there was no agreement at the beginning, if you take my car to be repaired, then I want no bond. And that's what Grace is. Grace gets $8,000 to write a letter for a fictitious company to raise $3 million. Here, it's influenced just like what the judge says about campaign contributions. And when you look at Citizens United or this idea of what you can do, it becomes very difficult. And so if he is misled and told time and time again you're guilty, I think that's where those statements come through. Thank you, Counsel. Good morning, and may it please the Court. Counsel, my name is Paige Messick. I'm an assistant U.S. attorney from the District of New Mexico. And it's a pleasure to be a visitor here in your circuit. One of the toughest things for me about this case is keeping straight which version of this ever-changing story Angus McGinty is relying upon at any given time, and then what are the consequences for that particular argument. In its simplest form, when it benefits McGinty, he wants the Court to believe that his lawyers were dirty. And when it doesn't benefit him, he wants to believe — he wants the Court to believe that they were innocent. And I'd like to talk about how that figures into the waiver analysis. Let's start with the story that McGinty argued or advanced when he was attempting to get a substantial assistance motion from the government to reduce his sentence. In that version, he argued that his own attorneys had bribed him with cash and free legal representation with the expectation of receiving judicial favors, which he, McGinty, then actually bestowed. Now, it seems to me that he has backed away somewhat from that argument or from — The December statement to the FBI. That's right. But how would we be able to use those facts if they're contested to resolve whether there was a knowing and voluntary plea? I think that we can use those facts as to what McGinty knew. I mean, we don't agree that he's shown that his lawyers bribed him. We couldn't show that in an investigation. But McGinty says, I knew this. So I think that we can attribute him with that knowledge because he said so in an interview. What's that? And that's what the district court did. I mean, this wasn't just a casual — You mean we don't even reach Kyler Strickland? Because he's gaming the system, and it's essentially a forfeiture more than a waiver in court. What's your best authority for that? The best authority that it is a waiver instead of — So we don't even have to assess ineffectiveness because there was an affirmative relinquishment of the Sixth Amendment right to conflict-free counsel. I'm not sure that I understand it. We wouldn't need to reach Strickland and Kyler if the Court finds that the claim that would invoke either of those standards was waived. So if he's waived his right to conflict-free counsel, the Court doesn't have to determine Is that the government's threshold position? That is the government's threshold position. Do you have a case for that? I don't have a case for that specifically. It just seems to logically follow that if an argument's waived, then it doesn't matter what standard would be used to evaluate the merits of that argument. Do you have to have a hearing to have that kind of waiver? No. You don't have to have a hearing for that kind of waiver. In the context of Ferretta hearings, for waiving the right to counsel entirely or waiving the assistance of counsel entirely, the Court has made it clear that a Ferretta hearing is not constitutionally required. And we're talking about the same Sixth Amendment right here. So if you don't have to have a hearing to show that you understand that you're waiving the right to counsel, you shouldn't have to have a hearing to show that you're knowingly waiving the right to conflict-free counsel. There is a real underlying problem here, which could be true not infrequently, where defendant unknowingly hires lawyer that has exposure. Lawyer says, let's rush him to a plea, no cooperation, because we don't want our criminality exposed. That's his argument. And the tough issue for me that I'd love to hear your thoughts on is if the government actually knows there have been strong suggestions the lawyers are corrupt, they have it in the 302s, why would the government ever sit quietly at a rearrangement? How would the government ever let the one person that doesn't know about that stench take a plea? So if we were in a different situation, because McGinty has alleged she did know those things, but if we take that out of the equation now, the government, in deciding whether to bring something like this to the attention of the district court, has to decide if there is a credible allegation of criminal wrongdoing, because the government can't just be gratuitously interfering with the attorney-client relationship. So here, when you have these five 302s, there's nothing in there that would bring that level of appearance to the government's attention. This is true, but let me put this in context. The first statement that Acevedo makes is during his initial confrontation with the FBI, where he's really still trying to say, I didn't do this, everybody does the same thing, it's not illegal, and he throws out the names Norton and Brown there, but then in that same interview, the FBI says, and what's your proof that they did anything improper here, and he says, I don't have any. So that one really goes nowhere. The next time he mentions them, he's saying they make campaign contributions to judges too, which is legal in Texas. That doesn't go anywhere either. We've then got somebody saying in another district that Brown had paid a court employee for testimony in an entirely unrelated case. It's not clear what that's about, if it even alleges anything illegal, but it's secondhand, it's unsubstantiated on its face, and it has a completely different investigation to the extent one's involved at all. We've then got a report that Brown was a conduit of a rumor in this case, not an actual wrongdoing. But there's no one stopping you from an in-camera submission to the judge. That's true. But the attorneys here did not actually perceive anything to bring to the judge's attention based on these vague, unsubstantiated allegations of mainly things that are not actually crimes. So I would say in this case, the attorneys for the government didn't perceive this to be a conflict at all. But if they had perceived ---- Roberts. Let's say, to use DOJ parlance, the lawyers were targets. Absolute duty on the government to disclose it, right? Absolutely. We would disclose that in that case. Lawyers were subjects, that is, putative defendants. Government's got to disclose? We would disclose in that case, too. You're saying that based on the informant saying five times they're corrupt, they were just witnesses to this matter? No duty to tell a judge, we have a little bit of a concern here. This guy's getting representation from people that may have a real reason to run him into a plea, not cooperate? I think that that would be overstating what's in the government's position for the rule of law going forward to other cases. But if the government ---- When does the government have an affirmative duty to say the lawyers that are walking a guy in to plead may themselves be doing it because they don't want exposure. They want this guy to plead and not cooperate quickly. I think that what the standard that balances the two interests here that would be most appropriate is when the government sees a credible allegation of criminal wrongdoing, the government should bring that to the judge. We don't have that in this case. As the district court correctly found, these allegations were not the center of the case. These were at the periphery of the investigation. They didn't necessarily even allege anything criminal. And the government simply didn't perceive them to be of rising to that level of credible allegation of criminal wrongdoing. If the prosecutors do perceive there to be this kind of potential conflict, the prosecutors already have very strong incentive to bring that to the district court's attention, because the government has a very strong interest in avoiding protracted post-conviction litigation like this. If the plea had broken down, they go into trial and the government puts Acevedo on the stand, and at that point he says in open court under oath, the attorneys right there were bribing, too, wouldn't they in the need? The court would have to disqualify him. It would be a mistrial, right? There's no question you could waive it then. Fair to say? I think it would be very unlikely the district court would allow him to waive it in that case. I — Therefore, it's the exact same statement, uncorroborated by the government witness. Well, I suppose, actually, in trial we could attempt to rehabilitate by saying, well, what do you mean by that? And if he said, well, really, I know that they were friends and he ruled — If they are not lawyers, they are not precipient witnesses right then. They've got to be disqualified. I think there may be a way in which Acevedo could explain what he's talking about. Or the government going into trial may perceive this coming up and at that point try to address the matter through motions in limine, and then it would be brought to the district court's attention. But back at this pre-plea stage, when really everything is still out there, everything is on the table, this wasn't something that the government would reasonably perceive to be something the district court needed to address then. So, in short, there's nothing about the government's conduct here that should excuse McGinty's voluntary knowing an intelligent waiver of his right to conflict free counsel. Moving on to the standard that the Court should apply if it does reach the merits of this claim. Strickland is the appropriate standard here. Right there. When you say that, will the government defend us? Because in your footnote, you acknowledge seven other circuits have gone the other way. So your position now to us is you're telling the Fifth Circuit to create a conflict with seven other circuits. The Fifth Circuit, I believe, is already in a conflict with most of the other. And you're urging us to deepen a conflict where it's one against seven. The government's going to defend us if they take cert and we decide the case on that legal ground. That's my understanding, Your Honor. Now, and there's some support to that in the Supreme Court's opinion in Mickens in which the Court said at the end of its opinion, we don't want to be misunderstood. We were assuming that Kyler applies in this case. A bunch of circuits have applied it in this case. Now, Mickens didn't involve this sort of situation. You know, we would note, however, that it is an open question whether Kyler should be expanded beyond the cases of concurrent multiple representation. So actually suggesting that perhaps Kyler is more cabined than this Court has even done, because in Beetz, the Court extended Kyler to any serial, serial representation as well as concurrent multiple representation. And the Supreme Court in Mickens indicated that even that expansion was questionable. So there is a — Roberts. I guess I might have thought the government would think that Beetz footnote is realigning the Fifth Circuit because essentially this is multiple representation. It's just the other person these lawyers are representing besides McGinty is themself. How isn't this exactly a multiple representation situation? Oh, if you were to consider these lawyers as potential co-defendants, then we would be in the land of the Beetz footnote. But the lawyers weren't here potential co-defendants. They weren't potential co-defendants from any of the perspectives that should matter. From the government's perspective, they were not targets or subjects of the investigation. There was no investigation into them. The government didn't intend to launch an investigation into them. They simply weren't potential co-defendants as far as the government saw it. They become potential co-defendants when they open a file and start an investigation? Well, they do. They certainly do after McGinty comes forward with these allegations. But that's not where they were at that time. Then you look at Brown and Norton's own perspective. Having viewed these FBI reports, would they perceive themselves to be potential co-defendants? And for the reasons I mentioned earlier, I don't think so. There's not a credible allegation of criminal wrongdoing here that would put a reasonable defense attorney in the position of believing that he is a potential co-defendant with his client in this case. If you look at McGinty's perspective, well, he has alleged that they, in fact, did bribe him. And so McGinty may perceive that they're potential co-defendants. But if McGinty, in fact, knows that they have bribed him, then I think that the Court should resolve that by going back to the waiver analysis. I don't believe that we are in the territory of that Beats footnote at all. So I don't think that the Court needs to move to the next question, which, although interesting, is a few steps down the line, and if we are in the territory of the Beats footnote, are the strong arguments in favor of applying Cuyler here actually the strongest arguments? And there again, I would say no. The Court already considered a number of the arguments in Beats for expanding Cuyler and rejected them. If the Court were to expand Cuyler here to the situation that McGinty has alleged, it would blur the lines of Strickland, which the Court in Beats acknowledged was highly undesirable and remains highly undesirable. Strickland is a time-tested, well-worn standard that district courts apply without problems every day. Applying Strickland also discourages baseless allegations against defense attorneys because a prejudice requirement removes the incentive to do that, versus multiple representation, which is a fairly difficult situation to fabricate. And then again, Mickens has already indicated that an expansion of Cuyler is somewhat questionable. So here I don't think that the arguments, even if we are in the Beats footnote, would counsel expanding Cuyler to this new situation. Applying Strickland, McGinty has not met it. He has not shown in any way that his counsel's performance fell below reasonable professional norms. He alleges that they didn't file a lot of things, but he's never explained what they should have filed or why it would have been to his benefit. I thought he did allege, and it wasn't disputed by the government, that these lawyers said to him, if you cooperate, we won't represent you. If you cooperate, no one will represent you. If you cooperate, your life is in danger. And we're going to say that's still effective lawyering? I don't believe that the government has conceded that they said that. But it is not unreasonable advice to say to a defendant that they should not cooperate based on, for instance, what they happen to know in this case. So I think if you were to take other defense attorneys who have no alleged conflict, put them in this situation, it is not clear that they would advise McGinty to cooperate either, especially given what we know, that McGinty's information that he offered to cooperate ended up going nowhere. Is it effective lawyering to tell a client to back data check? No, it certainly would not be effective lawyering to tell a client to back data check. I thought that ultimately in the whole package before us, it's not disputed that two lawyers told him, go quickly to the mechanic and back date the check. That is disputed. That was not ever alleged in the district court. The first time we see the allegations of back dating the check being one of the lawyer's suggestions is on appeal. And on appeal, the record that we have includes the affidavit from the FBI agent in which he says, McGinty told me that this was his idea of back dating the check. Well, the FBI affidavit says McGinty stated the idea of back dating the check to Otten was his own, but then goes on to say, and that he discussed this with Norton. So we don't know what Norton said there, but even if this is true, even if Norton did not discourage him from covering up his criminal act, he still hasn't shown strickling prejudice here, because the he would have to then use this as some kind of advice of counsel defense at trial, which doesn't exonerate him, because this only goes to the cover-up. And even if you're saying, I agreed to cover up my criminal wrongdoing because my attorney said that I should, it's still a consciousness of guilt. So here, I don't see how this testimony that he's saying he would like to offer at trial would in fact have benefited him. It's a very incomplete defense at best. But McGinty hasn't shown any prejudice under Strickland in that all of his arguments have to go to the voluntariness of his plea, which he swore under oath was being done of his own volition and with complete satisfaction in the performance of his attorneys. The biggest, it seems like the biggest focus on appeal is their advice that he should plead guilty. That was extremely sound advice under the circumstances. Given the strength of the government's evidence, the fact that his own intended defense is falling apart, the favorable nature of the government's plea agreement and the record reflect why the government agreed to only a two-year sentence? No. The record does not reflect that. And I don't happen to know. And if they were to prevail and vacate, you agree with opposing counsel that you could supersede with everything, including statements he's now made himself, about being bribed? Absolutely. What would his guideline range, do you know, if you run that? I don't know what his guideline range would be. A lot more than two years. I would imagine, because I think it was already at least 41 to 51 months simply on what he pled. I understand his guideline range was at least 41 to 51 based on the previous allegations. If we added new ones, I don't know how that would affect the guideline range. But the government had already had an argument that it should have been higher in the first place, but no incentive to actually raise that because of the C-1C. I see I am almost out of time. If the Court has any particular questions, I would love to have a chance to address  Thank you very much. Yes, go ahead. The easy thing to do is to say that everybody's a mess and he's waived it and it's a big corrupt ball of problems and not to reopen the case. And that's exactly why I am so fearful that when the plea launders the conflict, you never reach this. Because each time the colloquy or the waivers say, well, I waive my right to have conflict-free counsel. And in this exceptionally narrow band of cases, I don't think it's going to happen very often. I hope not. Typically, we've seen in Reeves and we've seen in Sullivan. I don't know if you're going to ask me. In Reeves or Sullivan, where there's disqualifications because the lawyer might have to appear before the grand jury or because they could be a possible suspect, the Court says, I'm going to disqualify you on my own. It's not a lot of cases that we're talking about. But in that narrow band, when an attorney has divided loyalties or even the possibility of divided loyalties, I do think fear infects that process. And it's hard to then attribute all of this to my client down the road when he got that advice that I believe was contaminated from the beginning. And the best example I can be able to show you is whether or not it's rational for me to be scared of being bit by a shark in my swimming pool. I can watch Jaws and I can know that it's fake and I can know that it's still on the screen, but I can still have that irrational fear. And Richard Thaler won the Nobel Prize in Economics this past year for this idea of how we behave predictably irrationally. And I think that part of what happens here when he talks about seeing Acevedo and when McGinty even says in the affidavits, Acevedo, Al Acevedo is the one that's debriefing. Al Acevedo is the criminal defense lawyer. Al Acevedo is the one that's giving influence. Al Acevedo is giving money. And when the FBI says, who else is acting like you, and he mentions the names of these two folks, it's hard for me to say somehow then it's all distance. And it happens so early in that process that the things we're talking about now about what McGinty knew or what he was told was good or was corrupt or was a bribery is all after that relationship has formed and he's in a very different boat than if it was truly, truly conflict-free counsel from San Antonio or New  And so I think there's somebody else outside of that system altogether who doesn't feel at some point that they're enmeshed or entangled or in some way they can do so. I just think you've got the ability to cross-examine witnesses. You've got to cross-examine Acevedo. And I do want to try the case back in the district court level. And I disagree about the guideline calculations. I don't necessarily think they're the same way because I think on a motion to quash I should just say Your prerogative and that has nothing to do with the legal issue before us. The legal issue, yes, it's a narrow, we hope it is, but it's an even more narrow circumstance when the defendant himself later says and doesn't contradict that he was bribed by the lawyers he picked. At that point, you've got an exception to the otherwise possible rule that the government would have to itself come forward. So then the question becomes does the government have any obligation to tell the And then let that happen in open court. Or is it solely related between the two advocates to decide that as to what constitutes a conflict? And I just think that if there's any possible concern, then you raise that with the trial court, whether it's ex parte or in a sealed motion, to be able to say let's have a hearing and put this on the record and tell me anything that you might be concerned about and that both sides can be able to address it. And McGinty can then affirmatively and voluntarily and knowingly waive any issues he might be able to have. But to then look at it in retrospect where maybe I thought I was having a trial this whole time and now all of a sudden I've pled and it's a guarantee that I'm going to prison, I do think at that point those statements are happening after he was told that he is guilty based upon grace. And if he has been misadvised as to grace, because if you look in what McGinty says in the record, in his first affidavit, I was told that quid pro quo is no longer the law based on grace. That's not what grace says. Grace says the exact opposite. When was he told? When does he claim he was told about the grace? This is like two weeks before. So before the trial date. So he filed no direct appeal saying, hey, I'm not guilty of a crime. There's no subject matter jurisdiction. No, you're right. He didn't. At that point, at that point, it just goes to show why at that point grace was such a thing. I doubt that grace was this pivotal. Well, it's just what's discussed. I just know that before I got involved, grace was in the affidavits and grace was held to be this pivotal decision that made him plead guilty and not have a trial because his lawyer said, we're going to lose based upon grace. And so I can just tell you that's what it was. Thank you both very much. Yes, and thanks for the reminder. Both of you, assistant U.S. attorney for your public service, court-appointed lawyer for your service. We appreciate it. And the Court will recess for the day.